FILED

MAR 1 8 2014

THOMAS G BRUTON
CLERK, U S DISTRICT COURT

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | No. 13 CR 590 |
| | ) | |
| v. | ) | Judge Sharon Johnson Coleman |
| | ) | |
| PAUL CARPARELLI | ) | Violations: Title 18, United |
| | ) | States Code, Sections 894 and |
| | ) | 1951 |

MAGISTRATE JUDGE COX

**SUPERSEDING
INDICTMENT**

**COUNT ONE**

The SPECIAL AUGUST 2012 GRAND JURY charges:

1.      At times material to this indictment:

a.      Mark Dziuban was Vice President of Sales at Company A, located in Carol Stream, Illinois.

b.      Frank Orlando operated an ink company that supplied ink to Company A.

c.      Individual B owned and operated a trucking business, Company B, located in Henderson, Nevada.

d.      Individual C owned and operated a print brokerage business, Company C, located in Menasha, Wisconsin.

e.      Individual D worked at a publishing and printing business, Company D, located in Hackensack, New Jersey.

1

f.     Company B owed a business debt to a company affiliated with Company A, and Companies C and D owed business debts to Company A.

2.     Beginning no later than in or about 2010, and continuing until in or about November 2010, in the Northern District of Illinois, Eastern Division, and elsewhere,

PAUL CARPARELLI,

defendant herein, with Mark Dziuban, George Brown, Frank Orlando, Vito Iozzo, and Robert McManus, and others known and unknown to the Grand Jury, did conspire to obstruct, delay, and affect commerce by extortion, namely the extortion of money and property of Companies B, C, and D from Individuals B, C, and D, by consent induced by wrongful use of actual and threatened force, violence, and fear, in violation of Title 18, United States Code, Section 1951.

3.     It was part of the conspiracy that Mark Dziuban, through Frank Orlando, met defendant PAUL CARPARELLI and George Brown and, along with Vito Iozzo and Robert McManus, they agreed to obtain money and property from companies by use of threatened force, violence and fear, in order to collect business debts for Dziuban, and in exchange Dziuban would pay to CARPARELLI and Brown a portion of the proceeds.

### Individual B and Company B in Nevada

4.     It was part of the conspiracy that in spring 2010, Mark Dziuban, Frank Orlando, George Brown, and defendant PAUL CARPARELLI met at a

2

restaurant in Lombard, Illinois, and discussed a business debt owed by Company B to a company affiliated with Company A.

5. It was further part of the conspiracy that George Brown and defendant PAUL CARPARELLI agreed to assist Mark Dziuban in collecting the business debt by use of threatened force, violence and fear.

6. It was further part of the conspiracy that Mark Dziuban provided to defendant PAUL CARPARELLI and George Brown the name and location of Individual B and Company B, and directed them to travel to Nevada to collect the business debt by use of threatened force, violence and fear.

7. It was further part of the conspiracy that on or about June 1, 2010, defendant PAUL CARPARELLI and George Brown traveled to Nevada to collect the business debt from Company B by use of threatened force, violence and fear.

8. It was further part of the conspiracy that defendant PAUL CARPARELLI reserved flights for George Brown and himself to travel to and from Las Vegas, Nevada.

9. It was further part of the conspiracy that George Brown rented a car in Nevada for use by himself and defendant PAUL CARPARELLI.

10. It was further part of the conspiracy that defendant PAUL CARPARELLI and George Brown went to the office of Company B in Nevada.

### Individual C and Company C in Wisconsin

11. It was further part of the conspiracy that defendant PAUL CARPARELLI directed George Brown to meet with Mark Dziuban, at which

3

meeting Dziuban provided to George Brown and Vito Iozzo information about Individual C and Company C.

12. It was further part of the conspiracy that defendant PAUL CARPARELLI directed Brown and Iozzo to travel to Wisconsin with Dziuban to collect, by use of threatened force, violence and fear, the business debt that Company C owed to Company A.

13. It was further part of the conspiracy that on or about October 7, 2010, Mark Dziuban, George Brown, and Vito Iozzo met with Individual C at a restaurant in Grand Chute, Wisconsin, and demanded that Individual C provide cash or property to satisfy the business debt that Company C owed to Company A.

14. It was further part of the conspiracy that Vito Iozzo demanded to see Individual C's driver's license and copied Individual C's personal information from the license onto a piece of paper.

15. It was further part of the conspiracy that on or about October 7, 2010, Mark Dziuban, George Brown, and Vito Iozzo threatened that Brown and Iozzo would return to confront Individual C if Individual C failed to pay Company C's business debt owed to Company A.

16. It was further part of the conspiracy that in approximately October 2010, Vito Iozzo arranged for a transport company to deliver to George Brown's residence a Ford Mustang belonging to Individual C, which Individual C had agreed to give to Mark Dziuban in partial payment of the debt.

4

17.     It was further part of the conspiracy that in approximately November 2010, Mark Dziuban paid approximately $9,000 to George Brown, which Brown split with defendant PAUL CARPARELLI and Vito Iozzo, as compensation for collecting the Ford Mustang from Individual C, which Dziuban, Co-worker A, and Co-worker B sold for approximately $26,500 to a car dealership in Glen Ellyn, Illinois.

### Individual D and Company D in New Jersey

18.     It was further part of the conspiracy that Mark Dziuban provided to defendant PAUL CARPARELLI and George Brown information about Company D and its location.

19.     It was further part of the conspiracy that defendant PAUL CARPARELLI and Mark Dziuban directed George Brown to travel to New Jersey to collect the business debt that Company D owed to Company A through the use of threatened force, violence and fear.

20.     It was further part of the conspiracy that on or about October 18, 2010, George Brown, Vito Iozzo, and Robert McManus flew to New York.

21.     It was further part of the conspiracy that on or about October 19, 2010, George Brown, Vito Iozzo, and Robert McManus entered Individual A's office in New Jersey and demanded payment from Individual D to satisfy Company D's business debt by use of threatened force, violence and fear.

22.     It was further part of the conspiracy that defendant and other conspirators concealed and hid and caused to be concealed and hidden the purposes

and the acts done in furtherance of the conspiracy, and used coded language and other means to avoid detection and apprehension by law enforcement authorities.

All in violation of Title 18, United States Code, Section 1951.

## COUNT TWO

The SPECIAL AUGUST 2012 GRAND JURY further charges:

1.     The allegations in paragraph 1 of Count One of this indictment are incorporated here.

2.     From on or about June 1, 2010, through on or about June 3, 2010, in the Northern District of Illinois, Eastern Division, and elsewhere,

PAUL CARPARELLI,

defendant herein, along with Mark Dziuban and George Brown, did attempt to obstruct, delay, and affect commerce by extortion, in that they attempted to extort property, namely money and property of Company B, from Individual B, with Individual B's consent induced by wrongful use of actual and threatened force, violence, and fear;

In violation of Title 18 United States Code, Section 1951.

7

## COUNT THREE

The SPECIAL AUGUST 2012 GRAND JURY further charges:

1.    At times material to this indictment:

a.    Beginning in or about March 2011, Individual G operated Restaurant 1 located in River Grove, Illinois.

b.    Individual F worked for Individual G at Restaurant 1. Individual F had disagreements with Individual G which contributed to the closing of Restaurant 1 in or about October 2011.

c.    At the time it closed, Restaurant 1 owed business debts to Company P and several other companies.

d.    After Restaurant 1 closed, Individual G planned to re-open Restaurant 1 under a new name. Individual G learned that Individual F had threatened to firebomb the restaurant if Individual G re-opened the restaurant.

e.    Individual G contacted Individual H for assistance in dealing with the threat from Individual F.

f.    Individual H contacted defendant PAUL CARPARELLI for assistance in dealing with the threat from Individual F.

g.    Individual H was cooperating with the Federal Bureau of Investigation, unbeknownst to defendant CARPARELLI, Individual E, and Individual G.

8

h.     In or about March 2012, Individual G re-opened the restaurant, as Restaurant 2, at the same location where Restaurant 1 had formerly operated in River Grove, Illinois.

2.     Beginning no later than in or about February 2012, and continuing until in or about March 2012, in the Northern District of Illinois, Eastern Division, and elsewhere,

PAUL CARPARELLI,

defendant herein, with Individual E, Individual F, and others unknown to the Grand Jury, did conspire to obstruct, delay, and affect commerce by extortion, namely the extortion of money and property of Restaurant 2 from Individual G, by consent induced by wrongful use of threatened force, violence, and fear, in violation of Title 18, United States Code, Section 1951.

3.     It was part of the conspiracy that defendant CARPARELLI and Individual E agreed to obtain money and property from Individual G by use of threatened force, violence and fear, in order to collect a business debt owed by Restaurant 1 to Company P.

4.     It was further part of the conspiracy that in February 2012, defendant CARPARELLI contacted Individual E to discuss the threat made by Individual F to Individual G and Restaurant 2.

5.     It was further part of the conspiracy that on or about February 6, 2012, defendant CARPARELLI and Individual E met at a restaurant in Riverside, Illinois.

9

6. It was further part of the conspiracy that Individual E arranged a meeting between defendant CARPARELLI and Individual F to discuss Individual G and the outstanding debts of Restaurant 1.

7. It was further part of the conspiracy that defendant CARPARELLI directed Individual H to meet with Individual G to discuss the debts owed by Restaurant 1.

8. It was further part of the conspiracy that Individual E advised defendant CARPARELLI that Restaurant 1 owed a debt to Company P.

9. It was further part of the conspiracy that defendant CARPARELLI and Individual E agreed that Individual G would have to pay the debt owed by Restaurant 1 to Company P, and in return they would assure Individual G that he could re-open the restaurant without fear of Individual F.

10. It was further part of the conspiracy that defendant CARPARELLI directed Individual H to contact Individual G to obtain payment of the debt owed to Company P.

11. It was further part of the conspiracy that on or about March 1, 2012, defendant CARPARELLI met with Individual H and took possession of a check drawn on Individual G's account.

12. It was further part of the conspiracy that defendant CARPARELLI gave Individual G's check to Individual E.

13. It was further part of the conspiracy that defendant CARPARELLI and Individual E concealed and hid and caused to be concealed and hidden the purposes

10

and the acts done in furtherance of the conspiracy to avoid detection and apprehension by law enforcement authorities.

All in violation of Title 18, United States Code, Section 1951.

## COUNT FOUR

The SPECIAL AUGUST 2012 GRAND JURY further charges:

1.     The allegations in paragraph 1 of Count Three of this indictment are incorporated here.

2.     From in or about February 2012, through in or about March, 2012, in the Northern District of Illinois, Eastern Division, and elsewhere,

PAUL CARPARELLI,

defendant herein, along with Individual E, did commit extortion, which extortion obstructed, delayed, and affected commerce, in that they obtained property, namely money and property from Individual G, with Individual G's consent induced by wrongful use of threatened force, violence, and fear;

In violation of Title 18 United States Code, Section 1951.

12

## COUNT FIVE

The SPECIAL AUGUST 2012 GRAND JURY further charges:

1.     At times material to this indictment:

      a.     Elio Desantis operated Company ED, located in Melrose Park, Illinois.  Company ED provided electrical services for renovation and construction projects.

      b.     Individual I operated a construction business, Company I, located in Western Springs, Illinois.

      c.     Individual I operated a construction business, Company G, located in Woodridge, Illinois.

      d.     Company I owed a business debt to Elio Desantis' company, Company ED.

      e.     Unbeknownst to defendant CARPARELLI and Elio Desantis, Individual H was cooperating with the Federal Bureau of Investigation.

2.     Beginning no later than in or about August 2012, and continuing until in or about March 2013, in the Northern District of Illinois, Eastern Division, and elsewhere,

### PAUL CARPARELLI,

defendant herein, with Elio Desantis, and others unknown to the Grand Jury, did conspire to obstruct, delay, and affect commerce by extortion, namely the extortion of money and property of Company G from Individual I, by consent induced by

wrongful use of threatened force, violence, and fear, in violation of Title 18, United States Code, Section 1951.

3.     It was part of the conspiracy that defendant CARPARELLI and Desantis agreed to obtain money and property from Individual I by use of threatened force, violence and fear, in order to collect a business debt owed by Company I to Company ED, and in exchange, Desantis would pay defendant CARPARELLI and Individual H a portion of the proceeds collected from Individual I for their efforts.

4.     It was further part of the conspiracy that in summer 2012, Desantis requested assistance from defendant CARPARELLI to collect a business debt owed to Company ED.

5.     It was further part of the conspiracy that defendant CARPARELLI directed Individual H to meet with Desantis to discuss collection of the debt.

6.     It was further part of the conspiracy that Desantis met with Individual H and informed Individual H that Individual I owed a debt of approximately $90,000.

7.     It was further part of the conspiracy that defendant CARPARELLI directed Individual H to contact Individual I and demand payment of the debt owed to Company ED.

8.     It was further part of the conspiracy that on or about September 26, 2012, defendant CARPARELLI and Desantis and met with Individual I and

Individual I's father in order to demand payment and set terms for payment of the debt.

9. It was further part of the conspiracy that on or about January 14, 2013, Desantis cashed a check from Company G in the amount of $2,300 made payable to Company ED.

10. It was further part of the conspiracy that on or about January 14, 2013, defendant CARPARELLI met with Desantis and Individual H at which time Desantis paid approximately $660 to defendant CARPARELLI, which CARPARELLI split with Individual H, as compensation for collecting approximately $2,200 from Individual I.

11. It was further part of the conspiracy that defendant CARPARELLI provided Individual H with accurate residence address information for Individual I, and directed Individual H to go to Individual I's residence to use threatened force, violence and fear to collect the debt.

12. It was further part of the conspiracy that on or about February 14, 2013, Desantis cashed a check from Company G in the amount of $1,300 made payable to Company ED.

13. It was further part of the conspiracy that on or about February 20, 2013, defendant CARPARELLI met with Desantis and Individual H at which time Desantis paid approximately $300 to defendant CARPARELLI, which CARPARELLI split with Individual H, as compensation for collecting approximately $1,200 from Individual I.

14.     It was further part of the conspiracy that defendant CARPARELLI and Desantis concealed and hid and caused to be concealed and hidden the purposes and the acts done in furtherance of the conspiracy to avoid detection and apprehension by law enforcement authorities.

All in violation of Title 18, United States Code, Section 1951.

## COUNT SIX

The SPECIAL AUGUST 2012 GRAND JURY further charges:

1.     The allegations in paragraph 1 of Count Five of this indictment are incorporated here.

2.     Beginning no later than in or about August 2012, and continuing until in or about March 2013, in the Northern District of Illinois, Eastern Division, and elsewhere,

PAUL CARPARELLI,

defendant herein, did knowingly conspire with Elio Desantis, and others unknown to the Grand Jury, to participate in the use of extortionate means, as that term is defined in Title 18, United States Code, Section 891(7), to collect and attempt to collect an extension of credit, as defined in Title 18, United States Code, Section 891(1), from Individual I by the use of express and implied threats of the use of violence and other criminal means to cause harm to the person of Individual I; in violation of Title 18 United States Code, Section 894.

3.     The allegations in paragraphs 3 through 14 of Count Five of this indictment are incorporated here.

All in violation of Title 18 United States Code, Section 894.

17

## COUNT SEVEN

The SPECIAL AUGUST 2012 GRAND JURY further charges:

1.     At times material to this indictment:

a.     From in or about 1999 to in or about 2010, Individual Z operated Bar Z, located in Elmhurst, Illinois.

b.     In June 2008, Individual Z accepted a loan of approximately $50,000 from Individual J which Individual Z intended to use to pay certain expenses of Bar Z.

c.     In or about June 2008, Individual J died.  After Individual J died, his widow, Individual K, contacted Individual Z to discuss payment of the debt.

d.     In or about July 2008, Individual Z and Individual K signed a promissory note setting the terms by which Individual Z would repay the debt created by the loan.

e.     Individual Z repaid a portion of the debt but failed to make full payments according to the terms of the promissory note.

f.     Individual H was cooperating with the Federal Bureau of Investigation, unbeknownst to defendant PAUL CARPARELLI, Frank Orlando, and Individual K.

2.     Beginning no later than in or about January 2013, and continuing until in or about April 2013, in the Northern District of Illinois, Eastern Division, and elsewhere,

18

PAUL CARPARELLI,

defendant herein, did knowingly conspire with Frank Orlando, and others known and unknown to the Grand Jury, to participate in the use of extortionate means, as that term is defined in Title 18, United States Code, Section 891(7), to collect and attempt to collect an extension of credit, as defined in Title 18, United States Code, Section 891(1), from Individual Z by the use of express and implied threats of the use of violence and other criminal means to cause harm to the person of Individual Z, in violation of Title 18 United States Code, Section 894.

3.     It was part of the conspiracy that defendant CARPARELLI and Orlando agreed to obtain money and property from Individual Z by express and implicit threats of violence, in order to collect a debt owed by Individual Z to Individual K.

4.     It was further part of the conspiracy that Orlando provided defendant CARPARELLI with information about the debt, including a copy of the promissory note.

5.     It was further part of the conspiracy that in or about January 2013, defendant CARPARELLI sought assistance from Individual H to collect the debt owed by Individual Z.

6.     It was further part of the conspiracy that in or about January 2013, defendant CARPARELLI provided Individual H with information about the debt, including a copy of the promissory note.

19

7.    It was further part of the conspiracy that Carparelli directed Individual H to contact Individual Z and demand that Individual Z repay his debt to Individual K.

8.    It was further part of the conspiracy that on or about April 5, 2013, defendant CARPARELLI met with Orlando and Individual H to discuss a beating of Individual Z and to make plans to use express and implied threats of violence to obtain payment of the debt.

9.    It was further part of the conspiracy that defendant CARPARELLI and Orlando concealed and hid and caused to be concealed and hidden the purposes and the acts done in furtherance of the conspiracy to avoid detection and apprehension by law enforcement authorities.

All in violation of Title 18, United States Code, Section 894.

## COUNT EIGHT

The SPECIAL AUGUST 2012 GRAND JURY further charges:

1.     The allegations in paragraph 1, of Count Seven of this indictment are incorporated here.

2.     Beginning no later than in or about January 2013, and continuing until in or about April 2013, in the Northern District of Illinois, Eastern Division, and elsewhere,

### PAUL CARPARELLI,

defendant herein, and others known and unknown to the Grand Jury, knowingly participated in the use of extortionate means, as that term is defined in Title 18, United States Code, Section 891(7), to collect and attempt to collect an extension of credit, as defined in Title 18, United States Code, Section 891(1), from Individual Z by the use of express and implied threats of the use of violence and other criminal means to cause harm to the person of Individual Z;

In violation of Title 18 United States Code, Section 894.

## COUNT NINE

The SPECIAL AUGUST 2012 GRAND JURY further charges:

1.    At times material to this indictment:

a.    Individual L operated a fuel distribution business, Company L, located in Janesville, Wisconsin.

b.    Individual M operated Company M, located in Illinois. Company M owned a company that operated a gas station to which Company L supplied fuel.

c.    Company L sued Company M over a contract dispute, and Company M countersued with claims against Company L.

2.    Beginning no later than in or about December 2010, and continuing until at least November 2011, in the Northern District of Illinois, Eastern Division, and elsewhere,

PAUL CARPARELLI,

defendant herein, with Individual N, George Brown, Vito Iozzo, and others known and unknown to the Grand Jury, did conspire to obstruct, delay, and affect commerce by extortion, namely the extortion of money and property of Company L from Individual L, by consent induced by wrongful use of threatened force, violence, and fear, in violation of Title 18, United States Code, Section 1951.

3.    It was part of the conspiracy that defendant CARPARELLI, Individual N, Brown, and Iozzo agreed to obtain money and property from Individual L by use of threatened force, violence and fear, in order to collect a business debt owed by

22

Company L to Company M, and in exchange Individual M would pay defendant CARPARELLI, Brown, and Iozzo a portion of the proceeds.

4.  It was further part of the conspiracy that in approximately December 2010, Individual N, who worked for Individual M, requested assistance from defendant CARPARELLI to collect a business debt owed to Company M.

5.  It was further part of the conspiracy that defendant CARPARELLI directed Brown to travel to Wisconsin with Iozzo and find Individual L to demand payment of the money owed to Company M using threatened force, violence and fear.

6.  It was further part of the conspiracy that defendant CARPARELLI, Individual N, Brown, and Iozzo met to discuss the debt that was owed to Individual M by Individual L and where to locate Individual L.

7.  It was further part of the conspiracy that Individual N provided defendant CARPARELLI and Brown with address information for Individual L.

8.  It was further part of the conspiracy that Individual N provided cash to Brown to cover some of the travel expenses incurred by Brown and Iozzo.

9.  It was further part of the conspiracy that in January 2011, Brown and Iozzo traveled to Company L's office in Janesville, Wisconsin, to locate Individual L, but after failing to locate Individual L they returned to Illinois.

10. It was further part of the conspiracy that in January 2011, Brown and Iozzo traveled to a residential address in Bristol, Wisconsin, to locate Individual L, but after failing to locate Individual L they returned to Illinois.

23

11.　　It was further part of the conspiracy that on or about January 25, 2011, Brown and Iozzo traveled to Kenosha, Wisconsin, and they met with Individual L and demanded, through use of threatened force, violence and fear, that Individual L pay money to Individual M.

12.　　It was further part of the conspiracy that defendant CARPARELLI, Individual N, Brown, and Iozzo concealed and hid and caused to be concealed and hidden the purposes and the acts done in furtherance of the conspiracy to avoid detection and apprehension by law enforcement authorities.

All in violation of Title 18, United States Code, Section 1951.

## FORFEITURE ALLEGATION

The SPECIAL AUGUST 2012 GRAND JURY further alleges:

1.      The allegations contained in Count One of this indictment are re-alleged and incorporated herein by reference for the purpose of alleging forfeiture pursuant to Title 18, United States Code, Section 981(a)(1)(C), and Title 28, United States Code, Section 2461(c).

2.      As a result of their violation of Title 18, United States Code, Section 1951, as alleged in the foregoing indictment,

PAUL CARPARELLI,

defendant herein, shall forfeit to the United States, pursuant to Title 18, United States Code, Section, 981(a)(1)(C), and Title 28, United States Code, Section 2461(c), any and all right, title and interest in property, real and personal, which constitutes and is derived from proceeds traceable to the charged offense.

3.      The interests of the defendant subject to forfeiture pursuant to Title 18, United States Code, Section, 981(a)(1)(C), and Title 28, United States Code, Section 2461(c) include but are not limited to $26,500.

All pursuant to Title 18, United States Code, Section 981(a)(1)(C), and Title 28, United States Code, Section 2461(c).

A TRUE BILL:

_____

FOREPERSON

_____

UNITED STATES ATTORNEY